Patrick Woolsey
Joshua Smith *(Motion for Admission to be Filed)*
Sierra Club Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
patrick.woolsey@sierraclub.org
joshua.smith@sierraclub.org
Telephone: (415) 977-5757
Fax: (510) 208-3140
*Attorneys for Plaintiff Sierra Club*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERRA CLUB,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>　　　　Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act, 5 U.S.C. § 552 |

## INTRODUCTION

Plaintiff Sierra Club, through counsel, alleges as follows:

1. Defendant U.S. Department of Agriculture ("USDA") has violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by refusing to produce documents related to the Executive Branch's freeze of congressionally-appropriated funding intended to ensure that rural Americans enjoy the same benefits of renewable electricity technologies as other Americans. Over a century ago, Congress created the Rural Utilities Service to bring electricity to rural communities, where it is often more difficult and expensive to extend electricity service. In the intervening years, technologies for generating, transmitting, and

storing clean energy have advanced, but barriers to deploying those technologies in rural areas persist. To overcome those barriers, and as part of the 2022 Inflation Reduction Act ("IRA"), Congress appropriated $9.7 billion for grants and low-cost federal loans for projects that generate, store, and transmit electricity, with the goal of improving the long-term resiliency, reliability, and affordability of rural electric systems, while also achieving the greatest reduction in greenhouse gas emissions. This program has become known as the Empowering Rural America ("New ERA") program.

2.     As part of the IRA, Congress also appropriated billions of dollars in grants and low-cost loans for small farmers and other rural agricultural businesses to invest in renewable energy and energy storage systems, energy efficiency improvements, carbon sequestration programs, and a variety of forest and agricultural conservation programs designed to reduce and mitigate greenhouse gas emissions.[1]

3.     In 2024, USDA signed final commitment letters obligating IRA funds to dozens of electric cooperatives, farmers, and other small agricultural businesses across the country. USDA has stated that these IRA programs would significantly reduce electricity rates for rural Americans, create jobs, and improve the resilience and reliability of the electric grid, while also reducing harmful greenhouse gas emissions. USDA estimates that the New ERA program, by itself, would reduce rural electric cooperative members' costs by 5% to 30%,

---

[1] *See* Inflation Reduction Act, Pub. L. No. 117-169, §§ 21001 (Climate Smart Agricultural Conservation Investments); § 21002 (Conservation Technical Assistance and a Carbon Sequestration and Greenhouse Gas Quantification Program); § 22001 (Funding for Renewable Energy Electricity and Storage); § 22002 (Rural Energy for America Program); § 22004 (Assistance for Rural Electric Cooperatives); § 23001 (National Forest System Restoration and Fuels Reduction Projects); § 23002 (Forest Landowner Climate Mitigation Participation); § 23003 (Forestry Conservation Programs); 136 Stat. 1818, 2015-21, 2023-26 (2022).

which translates to savings of approximately "$100 - $800 each year" on electricity bills for rural electricity customers, while also "removing 55 million tons of greenhouse gas pollution annually." *See* USDA Rural Development, Fact Sheet, *How Rural Americans Benefit from the New ERA Program*. These same projects will also result in substantial reductions in other air pollutants that are harmful to human health and the environment, including nitrogen oxides ("NOx"), sulfur dioxide ("SO2"), and particulate matter ("PM"). USDA also estimated that New ERA funding would "support 25,000 jobs." *Id*.

4.      Nevertheless, on January 20, 2025, President Trump issued an Executive Order pausing USDA's implementation of the IRA, and freezing the disbursement of IRA funds without citing any legal authority to do so. On March 25, 2025, USDA issued a press release stating that USDA would, at some unspecified time, release previously obligated funding under New ERA. *See* USDA, Press Release No. 0061.25, *USDA Delivers on Rural Energy Commitments, Provides Path for Applicants to Support U.S. Energy Independence* (Mar. 25, 2025).[2] The press release invited funding recipients to amend their applications  "to remove harmful DEIA [diversity, equity, inclusion, and accessibility] and far-left climate features from project proposals," stating that recipients "have 30 days to propose project revisions," and confirmed that New ERA disbursements had been halted. As of the date that this Complaint is being filed, it is unclear whether USDA continues to freeze the disbursement of IRA funding.

5.      Sierra Club is the nation's oldest grassroots environmental organization dedicated to protecting public health and the environment. One of Sierra Club's organizational goals is

---

[2] *Available at* https://www.usda.gov/about-usda/news/press-releases/2025/03/25/usda-delivers-rural-energy-commitments-provides-path-applicants-support-us-energy-independence.

to ensure that all Americans have access to clean, affordable electricity. To that end, Sierra Club was a vocal proponent for the passage of the IRA and specifically for the New ERA programs to advance Sierra Club's mission. Moreover, Sierra Club has members who are farmers, rural agricultural business owners, and customers and member-owners of rural electric cooperatives that were awarded IRA funding. These members have a direct interest in timely implementation of the IRA and disbursement of New ERA funding.

6.     Moreover, Sierra Club and its members have a longstanding interest in governmental accountability and transparency, and educating and mobilizing the public about the public health, environmental, and economic benefits of clean energy development.

7.     To further those interests, Sierra Club filed FOIA requests with USDA seeking documents related to the agency's implementation of the IRA's clean energy grant and loan programs, including all documents related to USDA's unlawful freeze of those funds. Specifically, to further its interests in governmental accountability, preserving public records, and educating the public about the benefits of the IRA, Sierra Club submitted an initial FOIA request to USDA on January 16, 2025, seeking applications submitted under the New ERA program, including the agency's analytical tools for evaluating those proposals, and all final agreements between USDA and each of the awarded electric cooperative recipients. *See* Exhibit A attached hereto.

8.     On February 4, 2025, in response to President Trump's January 20 Executive Order freezing the disbursement of federal funds under the IRA, Sierra Club submitted a second FOIA request seeking documents related to USDA's implementation of that Executive Order, including all communications and agency directives relating to the freeze of federal

loans or grants under the IRA programs that USDA administers. *See* Exhibit B attached hereto.

9.      On March 28, 2025, in response to USDA's March 25, 2025 press release inviting New ERA and other IRA assistance recipients to review and voluntarily revise their project plans to align with President Trump's priorities, Sierra Club submitted a third FOIA request seeking documents and communications related to the modification of New ERA or other IRA-funded renewable energy loans or grants. *See* Exhibit C attached hereto.

10.      On April 4, 2025, in response to President Trump's January 20, 2025 order freezing hiring at federal agencies including USDA, Sierra Club submitted a fourth FOIA request to USDA seeking records regarding staffing changes such as reassignments, eliminated positions, and vacancies at the agency. *See* Exhibit D attached hereto.

11.      FOIA required USDA to make determinations about whether to comply with Sierra Club's FOIA requests within twenty days—or, by February 5, 2025, February 24, 2025, April 17, 2025, and April 24, 2025, respectively, and to produce responsive documents promptly thereafter.

12.      Despite subsequent inquiries from Sierra Club, USDA has ignored the deadlines required by FOIA and still has not made determinations on Sierra Club's requests, nor produced any documents, as FOIA required it to do. In doing so, USDA has violated the law.

13.      Sierra Club brings this lawsuit to hold USDA accountable, and to respectfully request that the Court order USDA to produce the requested records.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

14.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

15.     Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff Sierra Club has its principal place of business in Oakland, California.

16.     For the same reason, intra-district assignment is proper in the Oakland Division. *See* Civil L.R. 3-2.

## **PARTIES**

17.     Plaintiff Sierra Club is incorporated in the State of California as a nonprofit public benefit corporation with headquarters in Oakland, California. Sierra Club is the nation's oldest environmental grassroots organization and has more than 617,000 members nationwide. Sierra Club is dedicated to protecting and preserving the natural and human environment, and its purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments. Sierra Club is a leading non-governmental organization seeking to educate and mobilize the public on issues related to the development of renewable energy. To that end, Sierra Club and its members played a key role in developing and implementing the IRA provisions at issue in the four FOIA requests at the heart of this case. In particular, Sierra played a key role in developing and advocating for the passage of the New ERA program, which is aimed at encouraging rural cooperative utilities to invest in renewable energy resources as a means to reduce their reliance on highly-polluting fossil fuel energy generation.

18.     Sierra Club also has numerous members who are customers and member-owners of rural electric cooperatives that were awarded New ERA funding. These members have a direct interest in timely implementation of the New ERA program and disbursement of its funding, as well as any decision by USDA to withhold that funding.

19.    Sierra Club also has members who live, work, and/or recreate near power plants operated by electric cooperatives that were awarded New ERA funding to enable them to reduce emissions from these plants. These members suffer aesthetic, recreational, and health harms from air pollution from these plants. USDA and the electric cooperatives that were awarded New ERA funding stated that New ERA funding would result in reducing millions of tons of emissions.  Sierra Club members stand to benefit from reduced emissions and improved air quality caused by the New ERA funding. Sierra Club members are harmed, and will continue to be harmed, by Defendants' pause of the New ERA program and funding, which will prolong the air pollution that harms Sierra Club members' aesthetic, recreational, and health interests.

20.    In support of those efforts and to further Sierra Club's long-standing interest in government accountability and transparency, Sierra Club submitted to USDA the FOIA requests at issue in this case.

21.    Sierra Club brings this action on its own behalf and on behalf of its members. Plaintiff and its members have been and continue to be injured by Defendant's failure to provide the requested public records within the statutory timeframes mandated by FOIA. Absent this critical information, Plaintiff cannot advance its mission to educate the public about the clean air and environmental benefits of the IRA, USDA's failure to implement those programs, and the agency's attempt to freeze federal funds that Congress appropriated specifically for the implementation of those programs. The requested relief will redress these injuries.

22.     Defendant USDA is an agency of the executive branch of the United States government within the meaning of 5 U.S.C. § 551(1). It has in its possession and control the records sought by Sierra Club and is therefore subject to FOIA under 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

23.     FOIA requires that federal agencies promptly release, upon request by a member of the public, documents and records within the possession of the agency, unless a statutory exemption applies. *Id.* § 552(a)-(b).

24.     Within twenty business days of an agency's receipt of a FOIA request, the agency must "determine . . . whether to comply" with the request. *Id.* § 552(a)(6)(A)(i). The agency must "immediately notify" the requester of "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I). If an agency determines that it will comply with the request, it must "promptly" release responsive, non-exempt records to the requester. *Id.* § 552(a)(6)(C)(i).

25.     FOIA also requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D).

26.     In certain limited instances, the agency may withhold records pursuant to nine specific exemptions. *Id.* § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

27.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester. *Id.* § 552(a)(4)(B).

28.     If the agency fails to comply with the statutory time limits, the requester is deemed to have exhausted their administrative remedies. *Id.* District courts may enjoin an

1   agency from withholding agency records and "order the production of any agency records

2   improperly withheld." *Id*.

## STATEMENT OF FACTS

The Inflation Reduction Act, the New ERA Program, and
President Trump's Executive Order Freezing Federal Funds

29.    Across much of rural America, reliance on fossil-fuel burning energy generation

is not simply a choice, but is often the only option. Rural electric cooperatives—member-

owned utilities that were formed to electrify remote areas—are often heavily reliant on aging

fossil-fuel generation resources that were constructed decades ago, and they have limited

capital to upgrade or transition to clean energy. Moreover, rural areas have much lower, and

more dispersed, population densities than suburban and urban areas, making it more

expensive to connect to newer, cleaner, or more affordable generation resources on the

electrical system. Thus, even though technologies for generating, transmitting, and storing

affordable clean energy have advanced in recent years, rural electric cooperatives face unique

barriers to implementing those technologies.

30.    To address these challenges, in 2022, Congress passed the IRA. Pub. L. No. 117-

169, 136 Stat. 1818 (2022). Among other provisions, Congress created a new program to

extend the benefits of the clean energy transition to rural communities: the New ERA

program. Congress appropriated $9.7 billion to fund New ERA clean energy grants and loans,

which are administered by the USDA to help rural electric cooperatives make the leap from

aging fossil fuel infrastructure to clean, reliable, and affordable energy systems. Funding can

be used for certain kinds of projects that generate, store, or transmit electricity, as well as for

energy efficiency improvements for generation and transmission systems.

31.     Congress also appropriated billions of dollars in grants and low-cost loans for small farmers and other rural agricultural businesses to invest in renewable energy and energy storage systems, energy efficiency improvements, carbon sequestration programs, and a variety of forest and agricultural conservation programs designed to reduce and mitigate greenhouse gas emissions.

32.     Following passage of the IRA, USDA issued guidance and regulations to implement the New ERA program, which required applicants to document and quantify estimated greenhouse gas emission reductions. 88 Fed. Reg. 31,218, 31,225 (May 16, 2023).

33.     From 2023 into early 2025, USDA issued grants or low-cost loans to 51 rural electric cooperatives across the country, with awards totaling in the billions of dollars. The New ERA funding will be used for a broad range of projects, including the construction of different types of generation resources, such as nuclear, hydropower, carbon capture and storage, wind, and solar. USDA also committed funding to projects that store electricity through hydroelectric pumped storage and battery storage. Additionally, USDA obligated New ERA funding to projects to build new, or upgrade existing, transmission infrastructure.

34.     Under the New ERA program, USDA awarded $7.4 billion in grants and approximately $2 billion in low-cost loans. USDA estimated that, collectively, the New ERA program would result in savings of "5% - 30% on electricity cost," which would translate to each cooperative customer saving between "$100 - $800 each year" on their electricity bill. USDA also estimated that the New ERA program would "remove[] 55 million tons of greenhouse gas pollution annually and "support 25,000 jobs." USDA, Fact Sheet, *How Rural Americans Benefit from the New ERA Program.* In total, the New ERA program infuses more

than "$35 billion in rural investments . . . creating the largest investment in rural communities since the 1935 Rural Electrification Act." *Id.*

35.     On January 20, 2025, President Trump signed an Executive Order directing all agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169)," and to review agency processes, policies, and programs for issuing congressionally appropriated IRA grants and loans for consistency with the new administration's policy preferences. 90 Fed. Reg. 8,353, 8,357 (Jan. 29, 2025). The New ERA program was included in, and authorized by, the IRA.

36.     Also on January 20, 2025, President Trump signed an order titled "Hiring Freeze," directing an immediate halt in hiring of new civilian employees by federal agencies, including USDA. 90 Fed. Reg. 8,247 (Jan. 28, 2025).

37.     On January 21, 2025, the Acting Director of the Office of Management and Budget ("OMB") issued a memorandum to the heads of departments and agencies stating that the Executive Order pausing disbursement of funds required them to halt disbursement of IRA-appropriated funds.

38.     On January 28, 2025, the U.S. Office of Personnel Management sent a memo titled "Fork in the Road" to millions of federal employees, including USDA employees, encouraging them to apply for a deferred resignation program which offered financial incentives to resign.

39.     On February 20, 2025, USDA issued a press release that stated that "USDA continues to review IRA funding to ensure that we honor our sacred obligation to American taxpayers—and to ensure that programs are focused on supporting farmers and ranchers, not

1    DEIA programs or far-left climate programs." USDA, Press Release No. 0030.25, *Secretary*

2    *Rollins Releases the First Tranche of Funding Under Review,* (Feb. 20, 2025).[3]

3        40.    On March 25, 2025, USDA issued another press release titled *USDA Delivers on*

4    *Rural Energy Commitments, Provides Path for Applicants to Support U.S. Energy*

5    *Independence.*[4] This press release stated that USDA would, at some unspecified time in the

6    future, release previously obligated funding under the New ERA program. The press release

7    invited New ERA applicants to modify their proposals to "remove harmful DEIA and far-left

8    climate features from project proposals" and stated that applicants "have 30 days to propose

9    project revisions."

10        41.    On March 26, 2025, USDA made available an online notification form[5] in order

11    for New ERA recipients to make changes to their New ERA projects. This form characterized

12    the previously approved and contractually-obligated New ERA projects as "proposals," and

13    confirmed that New ERA disbursements had been halted.

14        42.    USDA paused activities related to obligation or disbursement of New ERA and

15    other IRA-appropriated funds and continues to pause actual disbursement of funds under New

16    ERA.

17        43.    Based on its mission, its interests in governmental transparency and

18    accountability, preserving public records, and educating the public about the benefits of the

---

[3] *Available at* https://www.google.com/url?q=https://www.usda.gov/about-usda/news/press-releases/2025/02/20/secretary-rollins-releases-first-tranche-funding-under-review&sa=D&source=docs&ust=1747078080964501&usg=AOvVaw0sNxhdd_cUD8P9rPc01kD3.

[4] *Available at* https://www.usda.gov/about-usda/news/press-releases/2025/03/25/usda-delivers-rural-energy-commitments-provides-path-applicants-support-us-energy-independence.

[5] *Available at* https://www.rd.usda.gov/reap-newera-pace-notification.

COMPLAINT

Inflation Reduction Act and renewable energy, Sierra Club submitted an initial FOIA request with USDA on January 16, 2025, seeking documents submitted by rural electric cooperatives under the New ERA program, including the agency's analytical tools for evaluating those proposals, and all final agreements between USDA and each of the awarded cooperative recipients. *See* Ex. A. The purpose of this request was to preserve public records under the New ERA program, and to further Sierra Club's interest in governmental transparency and accountability.

44.    USDA has not acknowledged Sierra Club's January 16, 2025 FOIA request, and has not provided a final determination about whether to comply with that request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

45.    On February 4, 2025, in response to President Trump's Executive Order freezing the disbursement of federal funds under the IRA, Sierra Club submitted a second FOIA request seeking documents related to USDA's implementation of that Executive Order, including all communications and agency directives relating to the freeze of federal loans or grants under the IRA programs that USDA administers. *See* Ex. B.

46.    On February 13, 2025, USDA provided Sierra Club with an acknowledgement that the agency had received Sierra Club's February 4, 2025 FOIA request. However, the agency has not provided a final determination about whether to comply with that request. *See* 5 U.S.C. § 552(a)(6)(A)(i). Nor has the agency provided Sierra Club with any responsive documents.

47.    On or about March 18, 2025, Counsel for Sierra Club contacted USDA regarding the January 16, 2025 and February 4, 2025 FOIA requests. During that conversation, Counsel for Sierra Club offered to prioritize the release of certain documents and offered to narrow the

search terms to facilitate a more expeditious search, review, and production of documents. Also during that conversation, the USDA FOIA Officer stated that she was aware of responsive documents, including a list of New ERA recipients that she could provide to Sierra Club.

48.     After that discussion, on or about March 21, 2025, Sierra Club provided USDA with a list of priority documents, and search terms to help facilitate the review of responsive documents and email communications. USDA did not respond to that email or provide a final determination about whether to comply with the February 4, 2025 FOIA request. Nor did the agency provide Sierra Club with any responsive documents.

49.     Counsel for Sierra Club submitted follow-up emails to USDA on March 28, April 7, April 16, and April 30, 2025, seeking updates on the February 4, 2025 FOIA request, and again offering to prioritize certain documents and narrow the scope of USDA's search for responsive documents. USDA did not respond to those emails with any update or responsive documentation. Nor did the agency provide a final determination about whether to comply with the February 4, 2025 FOIA request.

50.     On March 28, 2025, in response to USDA's announcement inviting New ERA and other IRA assistance recipients to "review and voluntarily revise their project plans to align with President Trump's" priorities, Sierra Club submitted a third FOIA request seeking documents and communications related to the modification of New ERA or other IRA-funded renewable energy loans or grants. *See* Ex. C.

51.     USDA has not acknowledged Sierra Club's March 28, 2025 FOIA request, and has not provided a final determination about whether to comply with that request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

52.    On April 1, 2025, USDA notified its employees that they could again apply to resign via a deferred resignation program similar to that announced in the January 28 "Fork in the Road" memo.

53.    On April 4, 2025, in response to President Trump's January 20, 2025 order freezing hiring at federal agencies including USDA, Sierra Club submitted a fourth FOIA request to USDA seeking records regarding staffing changes such as reassignments, eliminated positions, and vacancies at the agency. *See* Ex. D.

54.    On April 17, 2025, President Trump signed a presidential memorandum titled "Extension of Hiring Freeze," extending the freeze on hiring of new civilian federal employees previously announced on January 20 until July 15, 2025.

55.    On May 1, 2025, USDA emailed counsel for Sierra Club indicating that the FOIA Officer formerly assigned to the February 4, 2025 FOIA request had retired, and offered to meet about the request.

56.    That same day, on May 1, counsel for Sierra Club again requested an update on the status of the February 4, 2025 FOIA request, and repeated Sierra Club's offer to help narrow the scope of the search. Sierra Club also sought updates regarding the January 16, 2025 FOIA request, as well as Sierra Club's March 28, 2025 request. As of the date of this Complaint, USDA has not responded to that email request, has failed to provide any final determination that the agency plans to respond to any of Sierra Club's FOIA requests, and has not provided Sierra Club with any responsive documents.

57.    On May 7, 2025, USDA sent Sierra Club a letter stating that it would not be able to process Sierra Club's April 4, 2025 FOIA request within the statutory deadline and

asserting that USDA needed additional time to process the request. However, USDA did not provide an estimated date by which it would process the request.

58.    On May 8, 2025, USDA sent Sierra Club a separate letter acknowledging that the agency had received Sierra Club's April 4, 2025 FOIA request. However, USDA has not provided a final determination about whether to comply with that request. *See* 5 U.S.C. § 552(a)(6)(A)(i). Nor has the agency provided Sierra Club with any responsive documents.

59.    On information and belief, as of May 2025, approximately 15,000 USDA employees, or roughly 15% of the agency's workforce, have opted to resign from the agency via the deferred resignation program offered in January 2025 and again in April 2025.

60.    On information and belief, resignations of USDA employees via the deferred resignation program, and the federal hiring freeze announced in January 2025 and extended in April 2025, have resulted in a significant increase in the number of vacant positions at USDA.

61.    On information and belief, staffing changes, resignations, and increased vacancies at USDA have already impacted and will likely continue to adversely impact USDA's ability to administer the timely disbursement of New ERA funding and other IRA-funded loans and grants.

## FIRST CAUSE OF ACTION

### Failure to Comply with Mandatory Determination Deadline

62.    Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein. On January 16, 2025, Plaintiff filed a FOIA request properly requesting records within USDA's control.

63.    Within twenty business days after receipt of a request, FOIA requires the agency to make a determination as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

64.    The FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

65.    More than twenty business days have passed since USDA received Plaintiff's January 16, 2025 request.

66.    USDA has failed to provide Plaintiff with a final and complete determination in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

67.    USDA has failed to produce documents responsive to Plaintiff's January 16, 2025 request in violation of 5 U.S.C. § 552(a)(3)(A).

68.    Sierra Club has exhausted the applicable administrative remedies.

69.    Sierra Club is entitled to obtain the requested records immediately at no cost.

## SECOND CAUSE OF ACTION

### Failure to Comply with Mandatory Determination Deadline

70.    Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

71.    On February 4, 2025, Plaintiff filed a FOIA request properly requesting records within USDA's control.

72.    Within twenty business days after receipt of a request, FOIA requires the agency to make a determination as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

73.    The FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

74.    More than twenty business days have passed since USDA received Plaintiff's February 4, 2025 request.

75.    USDA has failed to provide Plaintiff with a final and complete determination in violation of FOIA, 5 U.S.C.§ 552(a)(6)(A)(i).

76.    USDA has failed to produce documents responsive to Plaintiff's February 4, 2025 request in violation of 5 U.S.C. § 552(a)(3)(A).

77.    Sierra Club has exhausted the applicable administrative remedies.

78.    Sierra Club is entitled to obtain the requested records immediately at no cost.

## THIRD CAUSE OF ACTION

### Failure to Comply with Mandatory Determination Deadline

79.    Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

80.    On March 28, 2025, Plaintiff filed a FOIA request properly requesting records within USDA's control.

81.    Within twenty business days after receipt of a request, FOIA requires the agency to make a determination as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

82.    The FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

83.    More than twenty business days have passed since USDA received Plaintiff's March 28, 2025 request.

84. USDA has failed to provide Plaintiff with a final and complete determination in violation of FOIA, 5 U.S.C.§ 552(a)(6)(A)(i).

85. USDA has failed to produce documents responsive to Plaintiff's March 28, 2025 request in violation of 5 U.S.C. § 552(a)(3)(A).

86. Sierra Club has exhausted the applicable administrative remedies.

87. Sierra Club is entitled to obtain the requested records immediately at no cost.

## FOURTH CAUSE OF ACTION

### Failure to Comply with Mandatory Determination Deadline

88. Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

89. On April 4, 2025, Plaintiff filed a FOIA request properly requesting records within USDA's control.

90. Within twenty business days after receipt of a request, FOIA requires the agency to make a determination as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

91. The FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

92. More than twenty business days have passed since USDA received Plaintiff's April 4, 2025 request.

93. USDA has failed to provide Plaintiff with a final and complete determination in violation of FOIA, 5 U.S.C.§ 552(a)(6)(A)(i).

94. USDA has failed to produce documents responsive to Plaintiff's April 4, 2025 request in violation of 5 U.S.C. § 552(a)(3)(A).

95.     Sierra Club has exhausted the applicable administrative remedies.

96.     Sierra Club is entitled to obtain the requested records immediately at no cost.

## FIFTH CAUSE OF ACTION

### Failure to Promptly Disclose Responsive Records

97.     The previous paragraphs are re-alleged and incorporated by reference.

98.     USDA has not promptly disclosed records that are responsive to Sierra Club's January 16, February 4, March 28, or April 4, 2025 FOIA requests. 5 USC § 552(a)(3).

99.     USDA has not asserted that FOIA's statutory exemptions apply to the records that Plaintiff seeks.

100.    The Agency has thereby violated FOIA's requirement that the agency promptly make responsive, non-exempt records available to requesters. 5 U.S.C. § 552(a)(3).

101.    Unless enjoined and made subject to a declaration of the Plaintiff's legal rights by this Court, USDA will continue to violate FOIA and Plaintiff's right to receive public records.

## SIXTH CAUSE OF ACTION

### Failure to Conduct an Adequate Search

102.    The previous paragraphs are re-alleged and incorporated by reference.

103.    USDA is required to process Plaintiff's FOIA requests in a manner that complies with 5 U.S.C. § 552(a)(3).

104.    USDA has not undertaken a search that is reasonably calculated to locate all records that are responsive to Plaintiff's January 16, February 4, March 28, or April 4, 2025 FOIA requests.

105.    The agency has therefore violated FOIA's requirements. 5 U.S.C. § 552(a)(3).

106.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, USDA will continue to violate FOIA and Plaintiff's right to receive public records.

## SEVENTH CAUSE OF ACTION

### Unlawful Withholding of Non-Exempt Records

107.    The previous paragraphs are re-alleged and incorporated by reference.

108.    USDA has a statutory duty to produce all responsive records that are not subject to FOIA's exemptions. 5 U.S.C. § 552(d).

109.    On or about March 18, 2025, USDA informed counsel for Sierra Club that the agency possessed documents responsive to Sierra Club's February 4, 2025 FOIA request.

110.    USDA has violated FOIA by unlawfully withholding non-exempt records that are responsive to Plaintiff's February 4, 2025 FOIA request, without making any assertion that these records are exempt from production.

111.    Sierra Club has exhausted its administrative remedies and is otherwise entitled to obtain the requested records.

112.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, USDA will continue to violate FOIA and Plaintiff's right to receive public records.

## PRAYER FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against USDA as follows:

1.    Declaring that USDA has violated FOIA by failing to make a final determination upon Sierra Club's FOIA requests and by failing to produce non-exempt records responsive to Sierra Club's FOIA requests by the statutory deadlines;

2.    Ordering that USDA immediately produce the requested records to Sierra Club;

3.    Retaining jurisdiction over this matter to rule on any assertions by USDA that certain records are exempt from disclosure;

4.    Ordering USDA to produce an index identifying any documents or parts thereof

1    that it withholds and the basis for the withholdings, in the event that USDA

2    determines that certain records are exempt from disclosure;

3    5.    Awarding Sierra Club its costs and reasonable attorneys' fees; and

4    6.    Granting such other and further relief as the Court deems just and proper.

Dated: May 14, 2025                       Respectfully submitted,

*/s/ Patrick Woolsey*
Patrick Woolsey (CA Bar No. 329891)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
patrick.woolsey@sierraclub.org
Telephone: (415) 977-5757
Fax: (510) 208-3140

Joshua Smith* (OR Bar No. 071757)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
joshua.smith@sierraclub.org
Telephone: (415) 977-5765
Fax: (510) 208-3140

*Motion for Admission to be Filed*

*Attorneys for Plaintiff Sierra Club*